## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIWANNA HATCHER, | ) | |
| Plaintiff | ) | Civil Action |
| | ) | |
| v. | ) | |
| | ) | No. _____ |
| YWCA BETHLEHEM, | ) | |
| Defendant. | ) | |

### COMPLAINT

Plaintiff Tiwanna Hatcher ("Ms. Hatcher"), by her attorneys, Broughal & DeVito, L.L.P., brings this Complaint against Defendant YWCA Bethlehem ("YWCA").

### NATURE OF THE ACTION

1.     This is an action raising racial discrimination, racial harassment and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), 42 U.S.C. §§ 1981, 1983, and the Pennsylvania Human Relations Act, 43 P.A. § 951, et seq. ("PHRA").

2.     Ms. Hatcher was subjected to a barrage of racist and discriminatory conduct including her being fired because she is black. Her claims arise from that discriminatory and racist conduct.

### JURISDICTION AND VENUE

3.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because Ms. Hatcher's claims arise under federal law.

1

4.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Ms. Hatcher's state-law PHRA claims because they arise from the same events as Ms. Hatcher's federal claims.

5.      This Court is a proper venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because YWCA resides in this district for venue purposes and a substantial part of the events giving rise to this cause of action occurred in this district.

## PROCEDURAL PREREQUISITES

6.      Ms. Hatcher dual-filed a Charge of Discrimination, No. 530-2022-03108, with the United States Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on or about March 5, 2022.

7.      On or about November 3, 2022, Ms. Hatcher received a Notice of Right to Sue; this action is filed within ninety (90) days of Ms. Hatcher's receipt of the Notice of Right to Sue.

## PARTIES

8.      Plaintiff Tiwanna Hatcher lives at 20549 Williamsburg Court, Harper Woods, MI 48225.

9.      Defendant YWCA of Bethlehem maintains a principal address of 3895 Adler Place, #180, Bethlehem, PA 18017

## FACTS

10.      Ms. Hatcher is an African-American female.

11.      In October 2020, Ms. Hatcher was hired by YWCA as the Interim Director of Administration.

2

12.     Staci Bell ("Board Chair Bell") was YWCA's Board Chair at relevant times to this Complaint and is white.

13.     Board Chair Bell informed Ms. Hatcher that she was provided the title of Interim Director of Administration instead of the title of Interim Executive Director to mitigate the risk of an age discrimination lawsuit from the previous Executive Director who was white.

14.     On August 16, 2020, during in interview for employment with Mahboobeh Shekari, YWCA's Finance Director ("Finance Director Shekari"), Finance Director Shekari stated that she was surprised when she saw Ms. Hatcher's face on the Zoom interview, which indicated that Finance Director Shekari was surprised to see that Ms. Hatcher was black as her resume listed her as "T. Rose Hatcher."

15.     During her employment, Ms. Hatcher was required to meet with Board Chair Bell every Friday morning.

16.     The previous white Executive Director was not required to meet with Board Chair Bell every Friday morning.

17.     Ms. Hatcher was forced to facilitate monthly Board meetings, despite YWCA's By-Laws indicating that Board meetings shall be bi-monthly.

18.     Ms. Hatcher was required to meet monthly with the Executive Committee of YWCA, despite By-Laws mandating that Executive Committee meetings be solely for emergency purposes.

19.     The white Executive Director before Ms. Hatcher was not required to meet monthly with the Executive Committee.

20.     On October 16, 2020, Ms. Hatcher's first day of employment, Board Chair Bell asked Ms. Hatcher how she felt being a black woman in charge of white people.

21.     Board Chair Bell informed Ms. Hatcher that she thought it was great that Ms. Hatcher was a black woman in charge of white people.

22.     On October 30, 2020, Board Chair Bell stated that she was ecstatic when she first saw Ms. Hatcher's face.

23.     Board Chair Bell then retracted the statement and stated that she did not want Ms. Hatcher to think that she would be hired because of her race.

24.     Board Chair Bell told Ms. Hatcher that she was the "full package" and that a woman of color should lead the organization after the merger with the Allentown YWCA.

25.     Board Chair Bell referred to Ms. Hatcher as intimidating.

26.     Board Chair Bell stated that Ms. Hatcher was not easy to read.

27.     Board Chair Bell stated that she felt threatened by Ms. Hatcher.

28.     Board Chair Bell's references to Ms. Hatcher as intimating and threatening were based on Ms. Hatcher's race.

29.     Unbeknownst to Ms. Hatcher, YWCA's Board furloughed six or seven out of 15 staff and failed to consult with Ms. Hatcher about the furloughs.  This ran directly counter Ms. Hatcher's plan to retain staff.

30.     YWCA's Board did not manage staff under the previous Executive Director.

31.     Finance Director Shekari informed Ms. Hatcher that the YWCA Board did not treat the former white Executive Director the same way it treated Ms. Hatcher and that she did not know why they were treating her in this way.

4

32.     Finance Director Shekari informed Ms. Hatcher that a former white Board Member directed discriminatory remarks to Ms. Shekari based on her national origin.

33.     Board Chair Bell responded to a question from Ms. Hatcher about whether certain tasks she had were completed as intimating and fierce.  Board Chair Bell did not refer to the previous white Executive Director, or any other white administrators, as intimidating and fierce.

34.     In February 2021, the former YWCA Board Member, active volunteer and committee member, Sandra Dale ("Ms. Dale"), who is white, dropped off donations for a fundraiser.

35.     When Ms. Dale went into the office, she refused to provide Ms. Hatcher with the donation check, ignored Ms. Hatcher, and asked a white staff member who the Executive Director was.

36.     Ms. Hatcher responded that she was the Interim Executive Director.  Despite being informed that Ms. Hatcher was the Interim Executive Director, Ms. Dale referred to her as a secretary.

37.     The white staff member who was present during this exchange looked horrified and apologized to Ms. Hatcher for not stopping the racist exchange with Ms. Dale.

38.     Ms. Hatcher reported the incident with Ms. Dale to the YWCA Board.

39.     Ms. Hatcher was harassed by Board Chair Bell about the incident with Ms. Dale and informed her that it was her job to educate racist white people, rather than to make complaints about them.

40. Board Chair Bell listed Ms. Hatcher in a letter to stakeholders, staff, volunteers and the Board, but did not list Ms. Dale and communicated that someone was a survivor of racism in the workplace.

41. Ms. Hatcher explained to her the implications of protecting the reputation of Ms. Dale and the consequences if she did not list her name as the offender. In response, Board Chair Bell protected Ms. Dale while refusing to protect Ms. Hatcher's desire for confidentiality.

42. In response, Board Chair Bell informed Ms. Hatcher that she had to be the "bigger person."

43. Ms. Hatcher informed Board Chair Bell that she felt historically white people are protected from the consequences of racist behavior in this country at the expense of minorities and those who are victimized as she was.

44. In response, Board Chair Bell instructed Ms. Hatcher to rehabilitate Ms. Dale of her racism and to create training for the YWCA.

45. Ms. Hatcher facilitated a training with staff on *Racial Equity and Liberation* over a span of six weeks.

46. Ms. Hatcher sent the Board a training video which was specifically created for the YWCA Board at the request of Ms. Hatcher.

47. Board Chair Bell assured Ms. Hatcher that she would lead the efforts for the Board.

48. No one on the Board even watched the video.

49. Ms. Hatcher also engaged YWCA USA to identify resources to advance the Board's ability to meet its mission and be anti-racist.

50.     YWCA Board of Directors did not use any of the resources supplied to them by YWCA USA.

51.     During an event in June 2021, Board Chair Bell attended an event as Chair of Programming.

52.     While packing up after the event, Board Chair Bell claimed that a "black guy" was packing apples and that Ms. Hatcher wanted to take them to the senior center.  Board Chair Bell commented "this motherf***er (referring to Ms. Hatcher), doesn't take no for an answer."  When informed by Ms. Hatcher that this was inappropriate, Board Chair Bell laughed it off.

53.     As part of her job duties, Ms. Hatcher changed a job description for the "Why We Build" program and sent it to the HR Committee Chair, Ms. Sutter ("HR Committee Chair Sutter"), who is white.

54.     HR Committee Chair Sutter asked on whose direction the job description was changed.

55.     Ms. Hatcher's changes were ignored and the job description remained what it was beforehand even though this was outside of the scope of responsibility for Board Members and even though Ms. Hatcher thought it was not best for the YWCA.

56.     The former white Executive Director was authorized to change job descriptions and did change job descriptions without input from the Board.

57.     Ms. Hatcher's authority and autonomy were significantly lower than the authority and autonomy of the former Executive Director who was white.

58.     On July 23, 2021, Ms. Hatcher had a one-on-one meeting with Board Chair Bell who refused to give her the Executive Director title.

59. At the August 3, 2021, Board meeting, the Board voted for Ms. Hatcher to be the Executive Director.

60. Board Chair Bell was supposed to sign a form to change Ms. Hatcher's position title and status.

61. Ms. Hatcher requested the employment change status form several times between August 9 and September 6, 2021, from Board Chair Bell.

62. Board Chair Bell refused to complete the form.

63. On September 7, 2021, at a Board meeting ("September 7 Board Meeting"), a new Board Member, Rosalind Lucien, asked about diversity efforts.

64. Board Chair Bell inaccurately fabricated alleged diversity efforts.

65. Ms. Hatcher corrected Board Chair Bell.

66. Ms. Hatcher communicated to the Board that the Board was using racial microaggressions to her several times and gave examples of the harassment and abuse of power she had suffered at the hands of Board Chair Bell.

67. Ms. Hatcher further informed the Board that Board Chair Bell refused to authorize her change of employment status for over a month.

68. There was a heated discussion during which Ms. Hatcher stated that the Board Members were not meeting the mission of the YWCA to be anti-racist.

69. On September 7, 2021, a Board Member named Corinne Goodwin ("Board Member Goodwin") asked Ms. Hatcher if there was anything they could do to make it right.

70. Ms. Hatcher related that the Minutes of the September 7, 2021, Board Meeting were not accurate.

71.     One of Ms. Hatcher's requests to change the Meeting Minutes was after Ms. Hatcher submitted her resignation and complaint.

72.     Ms. Hatcher requested that the Minutes accurately reflect the meeting three times.

73.     Ms. Hatcher was ignored by Board Member Goodwin after her resignation.

74.     On September 8, 2021, after the September 7 Board Meeting, Board Chair Bell left a signed letter regarding Ms. Hatcher's employment status change to Executive Director on her desk with a bottle of wine.

75.     On September 10, 2021, Ms. Hatcher submitted her resignation to be effective on October 1, 2021.

76.     On September 10, 2021, Board Member Goodwin asked if there was anything that could be done to make it right and to get her to stay.

77.     Ms. Hatcher received calls and text messages from members of YWCA's Board stating that they were sorry she experienced the racism that she experienced.

78.     Ms. Hatcher resigned from the YWCA because of her receiving racial microaggressions, being forced to work in a racially hostile work environment including being micromanaged and abused by white leadership, the failure of the YWCA to change her employment status to Executive Director, as promised, the lack of action and accountability from the entire Board regarding Ms. Hatcher's efforts to train on racism and because of the YWCA's failure to meet the eliminating racism part of its mission.

79.     Ms. Hatcher was retaliated against by Board Chair Bell and Board Members Harris, Goodwin, Supinsky, Chrin, by being excluded from meetings, attempting to cancel meetings, discussing employment and organizational matters with volunteers, withholding critical

organization information from Ms. Hatcher, not following investigation procedures and timelines, and terminating Ms. Hatcher after she resigned, without cause.

80.     On September 12, 2021, Ms. Hatcher sent an e-mail of complaint to the entire YWCA Board regarding Board Chair Bell's abuse of power, the Board's tolerance for racism and its failure to support Ms. Hatcher.

81.     During the September 7 Board Meeting, Ms. Hatcher had already alerted the Board to her complaints orally.

82.     On September 13, 2021, Ms. Hatcher sent a complaint to the Board, via e-mail, in which she complained that she was retaliated against for reporting Board Chair Bell's racist conduct.

83.     Ms. Hatcher also complained that the Board failed to follow its harassment procedures, was not impartial, did not remove Board Chair Bell from her duties, and that Board Chair Bell was still operating her position.

84.     After the September 13, 2021, complaint, YWCA retaliated against Ms. Hatcher by excluding her from meetings and conversations related to her job.

85.     On September 16, 2021, Ms. Hatcher sent an e-mail to the Board explaining that certain Board members needed to be removed due to their term expiration.

86.     An emergency Board Meeting was held on September 17, 2021.

87.     During the September 17, 2021, meeting, which was held via Zoom, Ms. Hatcher was belittled and harassed by Board Member Goodwin and retaliated against by Board Member Goodwin by demanding that Ms. Hatcher copy her on all e-mails. This was not normal and had never been requested prior to her complaint.

88.     Four members resigned within seven days of Ms. Hatcher's initial complaint at the September 7 Board Meeting.

89.     The reasons for resignation included the racist treatment that Ms. Hatcher had received after issuing the complaint, the Board's racist behavior in general, and its failure to investigate.

90.     Two Board Members were removed within seven days of Ms. Hatcher's complaint because of their violation of their term limits.

91.     On September 19, 2021, Ms. Hatcher was informed in an emergency meeting by Board Members Harris and Goodwin, who were white, that she was being terminated.

<u>**COUNT I**</u>
<u>**DISCRIMINATION ON THE BASIS OF RACE UNDER TITLE VII AND PHRA**</u>

92.     Ms. Hatcher incorporates by reference Paragraphs 1 through 91 of this Complaint as if those paragraphs are set forth fully here.

93.     Ms. Hatcher is a black female.

94.     Ms. Hatcher was qualified for her position as YWCA Executive Director.

95.     Ms. Hatcher suffered adverse employment actions when:

- she was fired on September 19, 2021;
- when she was treated differently and adversely to the way the Executive Director before her, who was white, had been treated;
- when Defendant YWCA failed to apply or enforce its policies.

96.     As a result of Ms. Hatcher's race, she received less favorable employment terms than similarly situated white administrators received and was fired.

97.     Ms. Hatcher suffered damages as a result of the adverse employment actions by Defendant YWCA.

11

WHEREFORE, Plaintiff Tiwanna Hatcher requests this Honorable Court enter judgment in her favor and against Defendant YWCA and that she receive an award of backpay, frontpay, compensatory damages, punitive damages, attorney fees, and any other relief this Court deems proper.

**COUNT II**
**HARASSMENT ON THE BASIS OF RACE UNDER TITLE VII AND PHRA**

98.     Ms. Hatcher incorporates by reference Paragraphs 1 through of 97 of this Complaint as if those paragraphs are set forth fully here.

99.     Defendant YWCA is responsible for the actions of its administrators and Board Members.

100.     Ms. Hatcher was subjected to a hostile work environment rife with racist actions, racist comments, racist discrimination and retaliation by Defendant YWCA's administration and Board.

101.     The racial harassment was continuous, pervasive and regular throughout her employment as set forth above.

102.     Ms. Hatcher made multiple complaints to the Board regarding the racist treatment to which she had been subjected.

103.     Despite multiple complaints, YWCA failed to provide adequate support or enforce its policy.

104.     Ms. Hatcher suffered the racial harassment because she is black.

105.     The racial harassment exhibited by Defendant YWCA, which created a hostile work environment, impacted Ms. Hatcher's ability to serve in her position and caused her to resign from her position.

106.    Ms. Hatcher suffered emotional harm as a result of the racial harassment she was subjected to.

107.    The racial harassment, which was severe and pervasive, would detrimentally affect a reasonable person in the same position.

108.    The racial harassment was willful and intentional.

WHEREFORE, Plaintiff Tiwanna Hatcher requests this Honorable Court enter judgment in her favor and against Defendant YWCA, and that she receive an award of backpay, frontpay, compensatory damages, punitive damages, attorney fees, and any other relief this Court deems proper.

**COUNT III**
**RETALIATION UNDER TITLE VII AND PHRA**

109.    Ms. Hatcher incorporates by reference Paragraphs 1 through 108 of this Complaint as if those paragraphs are set forth fully here.

110.    Ms. Hatcher, as set forth above, made complaints to the Board, regarding racial discrimination and harassment.

111.    Ms. Hatcher's complaints were protected activities under Title VII and the PHRA.

112.    Defendant YWCA failed to adequately investigate Ms. Hatcher's complaints of discriminatory conduct.

113.    As a result of Ms. Hatcher's complaints, Defendant YWCA knowingly continued to subject her to a harassing and discriminatory environment and then fired her.

114.    Defendant YWCA fired Ms. Hatcher without providing any reason and without having any cause.

115.    Ms. Hatcher's termination was a direct result of her complaints to Defendant YWCA's Board of racial discrimination and harassment toward her.

WHEREFORE, Plaintiff Tiwanna Hatcher requests this Honorable Court enter judgment in her favor and against Defendant YWCA, and that she receive an award of backpay, frontpay, compensatory damages, punitive damages, attorney fees, and any other relief this Court deems proper.

**COUNT IV**
**VIOLATION OF 42 U.S.C. § 1981 THROUGH 42 U.S.C. § 1983**

116.    Ms. Hatcher incorporates by reference Paragraphs 1 through of 115 of this Complaint as if those paragraphs are set forth fully here.

117.    Ms. Hatcher, a black female, was discriminated against by Defendant YWCA because of her race, subjected to severe and pervasive discriminatory conduct creating a hostile work environment and retaliated against by Defendant YWCA for making complaints of racial discrimination.

118.    Defendant YWCA's discriminatory and retaliatory conduct because of race violated Ms. Hatcher's federal civil rights as guaranteed in 42 U.S.C. § 1981, which prohibits such conduct.

119.    Defendant YWCA's violation of Section 1981 included treating Ms. Hatcher less favorably because of her race.

120.    Defendant YWCA acted with deliberate indifference to Ms. Hatcher's rights under Section 1981 by continuing to regularly engage in discriminatory, harassing and retaliatory conduct towards her.

121.    As a direct and proximate result of Defendant YWCA's discriminatory and
retaliatory conduct, Ms. Hatcher suffered damages including, but not limited to, emotional harm.

WHEREFORE, Plaintiff Tiwanna Hatcher requests this Honorable Court enter judgment
in her favor and against Defendant YWCA and that she receive an award of backpay, frontpay,
compensatory damages, punitive damages, attorney fees, and any other relief this Honorable Court
deems proper.

**JURY TRIAL DEMAND**

122.    Plaintiff Tiwanna Hatcher demands a trial by jury on all claims and issues which
can be tried before a jury.

**BROUGHAL & DEVITO, L.L.P.**

Date: _____1/24/2023_____          BY:     _____s/John S. Harrison, Esquire___
                                             **John S. Harrison, Esquire**
                                             Attorney I.D. # 53864
                                             **Erika A. Farkas, Esquire**
                                             Attorney I.D. # 313686
                                             38 W. Market Street
                                             Bethlehem, PA 18018
                                             Telephone No: (610) 865-3664
                                             Facsimile No: (610) 865-0969
                                             johnharrison@broughal-devito.com
                                             erikafarkas@broughal-devito.com
                                             *Attorneys for Plaintiff*